864 P.2d 626

**Robert W. BRADFORD,
Plaintiff–Appellant,**

v.

**STATE of Idaho, Defendant–Respondent.**

No. 20343.

Court of Appeals of Idaho.

Sept. 8, 1993.

Knowlton, Miles, Merica & Brudie, P.A., Lewiston, Jeff M. Brudie, for appellant.

Larry EchoHawk, Atty. Gen., Thomas P. Watkins, Deputy Atty. Gen., Boise, for respondent.

LANSING, Judge.

Robert Bradford appeals an order of the district court summarily dismissing his petition for post-conviction relief. His petition alleged that Bradford was denied due process while incarcerated at the North Idaho Correctional Institution ("NICI") during a period of retained jurisdiction. The district court summarily dismissed the petition. For the reasons stated below we affirm.

Bradford pled guilty to grand theft, I.C. §§ 18–2403, 18–2407(1) and on July 31, 1991, was given an aggregate sentence of seven years with a minimum period of incarceration of three years. The district court retained jurisdiction for 180 days pursuant to I.C. § 19–2601 and ordered that Bradford be incarcerated at NICI during this period. On January 22, 1992, the district court, following the recommendation of the NICI jurisdictional review committee, relinquished jurisdiction and remanded Bradford to the custody of the Board of Correction.

On April 3, 1992, Bradford filed a verified petition for post-conviction relief pursuant to I.C. § 19–4901. The state responded by filing a motion to dismiss. Fol-

lowing submission of affidavits by both parties, the district court summarily dismissed the petition. Bradford appeals that order of dismissal.

 A petition for post-conviction relief initiates a proceeding which is civil in nature. *State v. Bearshield,* 104 Idaho 676, 662 P.2d 548 (1983). Like a civil plaintiff, the petitioner must prove by a preponderance of evidence the allegations upon which the request for relief is based. *Russell v. State,* 118 Idaho 65, 794 P.2d 654 (Ct.App.1990). A summary dismissal of a petition pursuant to I.C. § 19–4906 is functionally equivalent to entering summary judgment pursuant to I.R.C.P. 56. *Nellsch v. State,* 122 Idaho 426, 430, 835 P.2d 661, 665 (Ct.App.1992); *Ramirez v. State,* 113 Idaho 87, 89, 741 P.2d 374, 376 (Ct.App. 1987). Where it appears from the pleadings and any affidavits filed by the parties that no genuine issue of material fact exists, the trial court may summarily dispose of the application. However, where genuine factual issues are raised, an evidentiary hearing must be conducted as provided in I.C. § 19–4906. *Nellsch v. State, supra.*

On appeal we review the entire record to determine if a genuine issue of material fact exists which, if resolved in favor of the petitioner, would entitle the petitioner to the requested relief. The facts and inferences to be drawn from the evidence are construed liberally in favor of the petitioner. We are not required, however, to accept the legal conclusions which petitioner draws from the facts. We freely review the district court's application of law. *Id.* at 431, 434, 835 P.2d at 666.

 The purpose of the retained jurisdiction procedure is to provide a period for evaluation of the offender's potential for rehabilitation and suitability for probation. *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). With the benefit of a report from the correctional facility, the sentencing court may modify the sentence. A favorable report may lead the court to suspend the sentence and place the defendant on probation. *Wolfe,* 99 Idaho at 385, 582 P.2d at 731; *McDonald v. State,* 124 Idaho 103, 856, P.2d 893 (Ct.App.1992).

In *Wolfe,* the Supreme Court ruled that when NICI develops its report to the sentencing court following a period of retained jurisdiction, the inmate possesses a liberty interest in the proceedings sufficient to invoke minimal due process safeguards.

Before a report is sent back to the sentencing judge (pursuant to the retained jurisdiction of I.C. § 19–2601), certain procedures must be followed. The prisoner must be given adequate notice before the hearing, including notice of the substance of all matters that will be considered. The prisoner must be given an opportunity to explain or rebut any testimony or recommendations. In addition, the prisoner must be free to call witnesses in his behalf from among the employees and other prisoners at NICI. This information should be included in the report sent back to the sentencing judge.

99 Idaho at 389, 582 P.2d at 735.

Bradford alleges that he was denied due process in his jurisdictional review proceedings at NICI in that: ,(1) he was neither given notice of, nor allowed to be present at, the initial meeting where the jurisdictional review committee arrived at its tentative recommendation that the court relinquish jurisdiction; (2) he was not allowed to speak to desired witnesses prior to his hearing; (3) he was told by a staff member that he could not call live witnesses at his hearing but could only present witnesses' written statements; (4) he was not allowed to confront the staff members who had given him negative evaluations; (5) he was given inadequate time to prepare his rebuttal; and, (6) the jurisdictional review hearing was premature, taking place 43 days before expiration of the retained jurisdiction period. Construing Bradford's allegations as true, and with reference to the uncontroverted evidence offered by the State, we will address each of his claimed violations of *Wolfe* standards.

I

Bradford contends that he was denied due process because he was not present at an initial meeting on December 15, 1991,

where the NICI committee first conferred and arrived at a tentative recommendation against probation. Bradford concedes that he was taken before the committee on the same day and informed of the substance of both the recommendation and the information upon which the committee relied.

■ Bradford's contention that he had a right to be present at the initial committee conference is without merit. In *Wolfe* the Supreme Court held that inmates are entitled to comment upon or rebut the information relied upon, or the recommendation made by, the committee. 99 Idaho at 389, 582 P.2d at 735. However, *Wolfe* does not mandate that the inmate be present during the entire process by which a decision is reached by the committee. Although the initial meeting of the NICI committee is often referred to as a "hearing," it is in fact merely a conference where the committee reviews the inmate's record, considers staff evaluations, and develops a tentative recommendation as to whether the inmate should be placed on probation. An inmate does not have a right to be present during this meeting. So long as the inmate is provided the information upon which the committee bases its tentative decision, the committee does not rely upon secret information and the inmate is thereafter given an opportunity to present rebuttal evidence to the committee, the due process standards mandated by *Wolfe* have been met.

## II

Bradford next asserts that after being informed of the committee's preliminary recommendation he was placed in administrative segregation and was thereby deprived of the ability to speak to witnesses prior to the rebuttal hearing. The record supports this assertion that he was precluded from speaking to potential witnesses.

■ In analyzing this claim, we again return to the language in *Wolfe:* "In addition, the prisoner must be free to call witnesses in his behalf from among the employees and other prisoners at NICI." 99 Idaho at 389, 582 P.2d at 735. Clearly, Bradford's right to due process included the right to present the testimony of witnesses from within the populace and staff at NICI. He asks that we expand the right to call witnesses to include the right to personally interview those witnesses prior to his hearing. We decline to do so. The procedural due process protections afforded by *Wolfe* are substantially less than the full panoply to which a criminal defendant would be entitled at trial or sentencing. The customary procedure of placing inmates at NICI in administrative segregation after they have been informed of an adverse tentative recommendation of the committee does create a significant hurdle for the inmate who must decide what witnesses to call on his behalf. The inmate is prevented from personally ascertaining whether a witness will be favorable or not. Without any mechanism to ameliorate this result, the administrative segregation procedure might be deemed a denial of the inmate's right to call witnesses mandated by *Wolfe.*

We find, however, that the procedures utilized by NICI in Bradford's case adequately compensate for this impediment. A staff representative appointed to assist Bradford contacted those witnesses whom Bradford identified. The representative collected from those witnesses willing to participate, written statements that outlined the substance of their testimony. Bradford was, therefore, adequately apprised of what they would say and able to anticipate the testimony they would give if called to testify.

■ We interpret the prisoner's right to call witnesses under *Wolfe* to include a right to contact the witnesses in advance of the hearing in order to request their appearance and to ascertain the substance of their potential testimony. This contact need not be in person, however, but may be conducted through a third party such as the staff representative who assisted Bradford. So long as the procedures at NICI accomplish this goal of communication between the inmate and his witnesses, the inmate's right to present witnesses has not been unconstitutionally impaired. Therefore, we find that the administrative segre-

gation procedure did not deprive Bradford of due process.

## III

■ Bradford next contends that he was told by his staff representative that he would not be allowed to call witnesses to testify in person at his rebuttal hearing and that only written statements could be presented. Assuming the truth of this assertion, as required under the applicable standard of review, Bradford was not afforded the procedural safeguards to which he was entitled. Where an inmate is entirely denied the opportunity to call witnesses, the standards established in *Wolfe* are not met. *McDonald v. State, supra; State v. Hanslovan*, 116 Idaho 266, 268, 775 P.2d 158, 160 (Ct.App.1989).

However, our inquiry does not end here. Where a right has been violated, it is incumbent upon the inmate petitioner to establish that he or she has suffered prejudice entitling the petitioner to relief. Where an inmate has been denied the right to call witnesses at a jurisdictional review hearing, prejudice will not be assumed. Rather, the inmate must make some showing that the witnesses' testimony would have been material, favorable to the inmate's evaluation, and not merely cumulative. *McDonald; Hanslovan*, 116 Idaho at 268, 775 P.2d at 160.

Bradford has not met this requirement. He has not indicated which witnesses he would have called or in what way their testimony would have differed from the written statements that were presented to the committee and to the district court as part of the final recommendation. He has not shown how the testimony would have been material to the committee's or the district court's decision to relinquish jurisdiction. Because Bradford has not demonstrated that he was prejudiced by this denial of his right to call witnesses, we will not disturb the district court's order dismissing his petition for post-conviction relief.

## IV

Bradford also alleges that he was not allowed to confront those staff members who submitted negative evaluations of him to the NICI committee. This, he argues, is a further violation of procedural standards established by *Wolfe.*

■ The Supreme Court in *Wolfe* made no mention of any right to confront, interview or cross-examine adverse witnesses. We have held, however, that where the committee relied upon secret information from a confidential source whom the inmate was not allowed to confront or rebut, the inmate's due process rights were violated. *Dyer v. State*, 115 Idaho 773, 769 P.2d 1145 (Ct.App.1989). We conclude that the right to call witnesses, as enunciated in *Wolfe*, does include the right to call those who have already given negative assessments to the committee. This does not mean, however, that an inmate is entitled to have such witnesses made available for his examination without his request. To do so would suggest a right of confrontation similar to that afforded a criminal defendant by the Sixth Amendment of the United States Constitution. *Wolfe* does not suggest that such a right accrues during an inmate's jurisdictional review hearing.

If, as Bradford alleges, he was told he could not call witnesses to the hearing, then his right to question adverse witnesses was impaired. However, Bradford has again failed to provide any evidence that, if he had been permitted to question those witnesses, the substance of their testimony would have been different than that submitted in their written evaluations. In the absence of such evidence of prejudice, Bradford has not established a right to relief.

## V

Bradford's next assertion is that he was given inadequate time to prepare for his rebuttal hearing. The record does not support this conclusory allegation. Bradford was informed of the committee's tentative decision on December 15, 1991, at which point he was placed in administrative segregation for a period of over twenty-four hours. During that interval, a staff representative collected statements from five witnesses. In addition, Bradford was allowed to prepare a written rebuttal statement. At the hearing on December 16, 1991, Bradford was asked if he had been given adequate time to consider the evalua-

tions of the staff and the recommendation of the committee; he responded affirmatively. He also signed a document which informed him that he could request an extension if he needed more time. Under these circumstances, Bradford has not raised a genuine issue of fact as to whether he was denied adequate time to prepare his rebuttal.

## VI

Finally, Bradford contends that the committee's report was not fair because it was based upon observation of Bradford's conduct at NICI for only 74 days and was prepared while there were still about 43 days remaining in the retained jurisdiction period. The 180 days of retained jurisdiction began on July 31, 1991, the date when Bradford was sentenced. Bradford was transferred from the county jail to NICI on October 2, 1991, over two months after sentencing. Upon his arrival at NICI he was informed that his initial appearance before the jurisdictional review committee would be December 15, 1991, to be followed by an opportunity for a rebuttal hearing at least twenty-four hours later. The hearing was conducted as scheduled, and the committee's report to the court was dated December 17, 1991. The retained jurisdiction period would have continued until January 27, 1992, had the court not entered an order relinquishing jurisdiction on January 22, 1992. The committee's report was not supplemented at any time prior to the court's order relinquishing jurisdiction.

The committee's report indicated that Bradford had made some positive changes, but that his progress was inadequate for him to be considered a good candidate for probation, an observation which Bradford contends illustrates the unfairness of conducting the jurisdictional review hearing so early in the retained jurisdiction term.

■ While we recognize that the NICI report was based upon observation of Bradford for only 74 days, and an additional 43 days remained available for manifestation of further rehabilitative progress, we conclude that this comparatively early review and report to the sentencing court did not contravene any statutory or constitutional right of Bradford. Idaho Code

§ 19–2601(4) specifies that the sentencing court may retain jurisdiction for the first 120 days and that this period may be extended for an additional 60 days. The statute does not require that the district court, having decided to retain jurisdiction, must continue that retention for a full 120 days or for any minimum period. If the court at any time during the 120 days or 180 days, as the case may be, reasonably concludes that jurisdiction should be relinquished and a sentence executed, the court may so order, provided the minimum procedural safeguards required by *Wolfe* have been observed. Nothing in the statute creates for inmates an entitlement to a particular minimal period within which to demonstrate their rehabilitation potential.

Neither is a right to a minimum period at NICI encompassed within the constitutional right to due process which was recognized and defined by our Supreme Court in *Wolfe*. Rather, the holding in *Wolfe* is limited to defining certain procedural standards that must be followed to ensure that the inmate is afforded an adequate opportunity to provide input into the jurisdictional review process and to rebut negative evaluations which may be received by the jurisdictional review committee from NICI staff. In *State v. Shofner*, 103 Idaho 767, 769–770, 653 P.2d 1179, 1181–1182 (Ct.App. 1982) we noted that:

"... While there is language in *Wolfe* stressing the need for fair, accurate and comprehensive NICI reports, the court in its holding confined itself to setting forth the minimal procedures required to satisfy due process. The court observed that its procedural guidelines would help ensure that the reports are as complete and fair as possible."

As we interpret *Wolfe*, the "fairness" sought to be assured is fairness in the hearing process which can be accomplished by affording the inmate adequate notice of matters to be considered by the NICI committee, giving the inmate an opportunity to present evidence to the committee, and having the inmates' evidence included in the report sent to the sentencing judge. *Wolfe* does not require that the NICI committee receive the optimal information that could possibly be developed before issuing a re-

port or that the report be based upon the maximum possible period of evaluation of each inmate.

We do not suggest, however, that NICI inmates are subject to the arbitrary whims of the jurisdictional review committee. A sentencing court could not properly rely upon a committee recommendation for which there existed no rational basis in the record. In a somewhat analogous procedure—judicial review of the Parole Board's denial of an inmate's request for parole—the Idaho Supreme Court has held that the appropriate judicial inquiry is whether there is a rational basis in the record for the board's conclusions embodied in its statement of reasons for denying parole. *Ybarra v. Dermitt*, 104 Idaho 150, 151, 657 P.2d 14, 15 (1983). We think that a similar standard should be applied by a sentencing court in considering a jurisdictional review report. If the evidence relied upon by the committee, as revealed in the report or in documentation accompanying the report, does not provide a rational basis for the committee's recommendations, it would be an abuse of discretion for the court to act upon the committee's recommendations without further inquiry. If the court finds that the NICI recommendation is without a rational basis in the record, it is incumbent upon the court to disregard the recommendation and to base its decision on other evidence.

While it is possible that an NICI report could be based upon such a short period of observation of the inmate or so little reliable information from NICI staff as to lack a rational basis for the committee's conclusion, that it is not the circumstance presented here. The report on Bradford states that an alcohol/drug assessment indicated that he had a definite substance abuse problem and that Bradford's motivation for treatment was minimal. The report indicates that staff evaluations described Bradford as being very argumentative, immature and defensive. He also displayed inappropriate behavior and a low regard for others. The report further stated that he had received three disciplinary offense reports while at NICI. Although the report recognized that Bradford was working on his problems, it concluded that

it would take another year for him to be ready to live successfully in society. Therefore, the committee recommended against probation. Despite being based upon only a short period of observation, the report does disclose that the evidence before the committee presented a rational basis for the recommendation. Accordingly, the district court could properly rely upon the recommendation in deciding whether to put Bradford on probation or to order execution of the original sentence.

In conclusion, Bradford has not demonstrated that he was deprived of due process in proceedings at NICI or that he had a right to a longer period of rehabilitation effort at NICI before his jurisdictional review hearing. Therefore, the order dismissing his petition for post-conviction relief is affirmed.

WALTERS, C.J., and PERRY, J., concur.