Lawny Lamar BROWNING,
Plaintiff–Appellee,

v.

Richard A. VERNON, Director; Ron McKinsey, Defendants–Appellants.

No. 94–35136.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1994.

Decided Jan. 10, 1995.

**3.** I express no opinion on other issues or defens-

es that might affect the decision in this case.

Timothy D. Wilson, Deputy Atty. Gen., and Robert R. Gates, Special Deputy Atty. Gen., State of Idaho, Boise, ID, for defendants-appellants.

Stephen L. Pevar, American Civil Liberties Union, Denver, CO, for plaintiff-appellee.

Before BEEZER and FERNANDEZ, Circuit Judges, and ORRICK *, District Judge.

BEEZER, Circuit Judge:

Defendants, Richard Vernon and Ron McKinsey, appeal the district court's denial of their motions for summary judgment. Plaintiffs, a class of inmates in the North Idaho Correctional Institution, filed this action alleging due process violations in the administration of Idaho's retained jurisdiction program. Vernon and McKinsey contend that they are entitled to qualified immunity from damages because the allegations in the complaint do not constitute violations of a clearly established liberty interest protected by the Due Process Clause. The district court had jurisdiction under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. We have jurisdiction pursuant to 28 U.S.C. § 1291. *Pelletier v. Federal Home Loan Bank,* 968 F.2d 865, 869 (9th Cir.1992). We affirm.

## I

A group of several hundred inmates ("Inmates") at the North Idaho Correctional Institution ("NICI") filed this class action seek-

---

* The Honorable William H. Orrick, Senior United States District Judge for the Northern District of California, sitting by designation.

ing declaratory relief, injunctive relief and punitive damages for violations of their due process rights in connection with the retained jurisdiction program (the "Rider Program").[1] The inmates sued the administrators of the Rider Program, Richard Vernon, Director of the Idaho Department of Correction, and Ron McKinsey, warden of the North Idaho Correctional Institution, in both their individual and official capacities. The inmates state that the purpose of the Rider Program is to place offenders in a setting where they may be evaluated for their potential for probation. They argue that the program creates a liberty interest in an objective and accurate assessment of their probation potential and that they are being denied this right without due process of law.

In 1972, Idaho created the Rider Program by statute. Under the program, a state district court may retain jurisdiction over an individual upon conviction of a felony.[2] Instead of ordering the defendant to begin serving the full sentence immediately, the sentencing court may place the individual in a correctional institution to be evaluated for potential release on probation. Toward the end of the retained jurisdiction period, the Jurisdictional Review Committee ("JRC") sends a report and recommendation to the sentencing court with a recommendation to either release the inmate on probation or revoke jurisdiction and order the inmate to serve out the remainder of the original sentence.

At issue is the preparation of the report and recommendation by NICI staff. The process, as described by Vernon and McKinsey, begins when the inmate is notified of the initial rehabilitation recommendation. The inmate is permitted to read all evaluations and the initial recommendation. An inmate with a negative rehabilitation recommendation is then immediately placed in segregated confinement. Approximately twenty four hours later, the inmate is brought before the JRC and permitted to rebut any information or recommendations made by the JRC. At this rebuttal hearing, the inmate may make an oral or written rebuttal statement and call members of the NICI staff and other inmates as witnesses. Based on all of this information, the JRC issues a final report which is forwarded to the sentencing court.

The inmates do not dispute these facts but claim that this process violates the Due Process Clause of both the United States Constitution and the Idaho Constitution. The inmates contend that (1) the one day notice is inadequate time to prepare for the rebuttal hearing; (2) although they are permitted to review the report and recommendation, they are not allowed to retain a copy for use in preparing their rebuttal; (3) they are given an inadequate explanation of negative evaluations prior to the rebuttal hearing; and (4) because they are immediately segregated from the general population, they are unable to contact witnesses and call them at the rebuttal hearing.

The district court denied Vernon's and McKinsey's motions for summary judgment, holding that the inmates have a protected liberty interest in a fair and accurate recommendation report which they were denied without due process of law. The district court further held that Vernon and McKinsey are not entitled to qualified immunity from liability for the Section 1983 claims.[3]

1.  If awarded, the damages sought will be placed in a court supervised fund enabling the inmates to obtain counsel to assist with challenges to the denial of probation.

2.  Idaho Code § 19–2601 states in pertinent part:

    Whenever any person shall have been convicted, or enter a plea of guilty, in any district court of the State of Idaho, of or to any crime against the laws of the state, except those of treason or murder, the court in its discretion, may:
    ... (4) Suspend the execution of the judgment at any time during the first [120–180] days of a sentence to the custody of the state board of correction, during which time the court shall retain jurisdiction over the defendant which jurisdiction shall be entered on the order of commitment, and place the defendant on probation under such terms and conditions as it deems necessary and expedient....

3.  On September 30, 1994, the district court granted the inmates' motion for summary judgment on the remaining claims. The district court held that the inmates' rights under the Fourteenth Amendment were violated; it ordered the defendants to provide written regulations governing operation of the Rider Program; and it enjoined the defendants from engaging in certain practices found to violate due process.

## II

■ We review *de novo* both a district court's decision concerning constitutional rights and its decision to deny qualified immunity in a section 1983 action. *National Ass'n of Radiation Survivors v. Derwinski*, 994 F.2d 583, 587 (9th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 634, 126 L.Ed.2d 592 (1993); *Elder v. Holloway*, —— U.S. ——, ——, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994).

## III

Section 1983 permits claims for money damages against any person who, acting under color of state law, denies an individual rights, privileges or immunities guaranteed by the Constitution or laws of the United States. 42 U.S.C. § 1983. In order to state a Section 1983 cause of action brought pursuant to the Due Process Clause, the inmates must assert a protected liberty interest which was denied them without due process of law.

■ The threshold question is whether, under the Rider Program, the inmates have a protected liberty interest in an objective and reliable rehabilitation report. A liberty interest protected by the Fourteenth Amendment may be derived from the Due Process Clause itself or from the laws of the states. *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983). A right to a fair and accurate rehabilitation report under the Rider Program does not derive directly from the Due Process Clause of the United States Constitution. Instead, we must determine whether Idaho state law gives rise to such a right.

We recently held that a state may create a liberty interest by "(1) establishing 'substantive predicates' to govern official decision-making, and (2) using 'explicitly mandatory language,' i.e. specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Walker v. Sumner*, 14 F.3d

1415, 1419 (9th Cir.1994) (quoting *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462–63, 109 S.Ct. 1904, 1909–10, 104 L.Ed.2d 506 (1989)).

The Idaho Supreme Court first addressed the Rider Program in *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). *Wolfe* explicitly holds that I.C. § 19–2601 creates a liberty interest protected by the Due Process Clause of both the United States Constitution and the Idaho Constitution. *Wolfe* describes the Rider Program as one where "[t]he sentencing judge in seeking more information as to how to best deal with the criminal, sentenced him to the Board of Corrections to be studied and evaluated" and, as a result, the rehabilitation report is the most critical element of the program. *Id.* at 733. The Idaho Court then found that the inmate's, as well as the state's, expectation of an accurate evaluation and rehabilitation report is a liberty interest which warrants due process protection.[4] *Id.*

In *Wolfe*, the Idaho Supreme Court places clear limits on official discretion by mandating that NICI officials provide Rider Program participants certain minimum due process protections. *Wolfe* holds that state correctional officials have a duty to supply the sentencing court with a fair assessment of the inmate's rehabilitative potential and specifies the due process requirements needed to ensure the report's accuracy. Through the Rider Program, Idaho has placed "substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983).

We agree with *Wolfe* and hold that the Idaho Rider Program creates a liberty interest, protected by the Due Process Clause of the Fourteenth Amendment, in a fair and accurate rehabilitation evaluation and report.

## IV

■ Vernon and McKinsey argue that, even if a liberty interest exists, they are entitled to qualified immunity from liability

---

4. Since *Wolfe*, an inmate's ability to rebut the recommendation before the report is sent to the sentencing judge has become even more important. *See State v. White*, 107 Idaho 941, 694 P.2d

890, 892 (1985) (holding that inmate has no right to a hearing before the sentencing judge at the end of the period of retained jurisdiction).

for alleged violations of the inmates' due process rights. Qualified immunity protects state officials, performing discretionary duties, from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[5]

■ Whether Vernon and McKinsey are entitled to qualified immunity requires a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful? *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871–72 (9th Cir.1993).

■ The inmates bear the burden of proving the existence of a "clearly established" liberty interest at the time of Vernon's and McKinsey's allegedly impermissible conduct. *Maraziti v. First Interstate Bank,* 953 F.2d 520, 523 (9th Cir.1992). If the inmates meet this burden, then Vernon and McKinsey bear the burden of establishing that their actions are reasonable, even if they violate the inmates constitutional rights. *Id.*

### A

■ The liberty interest at issue has been clearly established in Idaho since *State v. Wolfe* was decided in 1978. The Idaho Supreme Court's opinion explicitly states that the inmates in the Rider Program have a liberty interest in a fair and reliable report. Subsequent decisions of the Idaho courts have reaffirmed *Wolfe*'s holding. *See, e.g., State v. White,* 107 Idaho 941, 694 P.2d 890, 891 (1985) ("prisoner has a sufficient interest in the fairness of the evaluations by the North Idaho Correctional Institution ... to invoke procedural due process requirements of the Fourteenth Amendment...."); *State v. Machen,* 100 Idaho 167, 595 P.2d 316, 318 (1979) (finding that *Wolfe* mandates certain procedures to ensure report is complete and provides inmate with basic fairness); *Brad-*

*ford v. State,* 124 Idaho 788, 864 P.2d 626, 629 (App.1993) (holding customary practice of placing inmates in segregation may deny inmate his right to call witnesses as enumerated in *Wolfe* ); *Dyer v. State,* 115 Idaho 773, 769 P.2d 1145, 1146 (App.1989) (deciding *Wolfe* established minimum due process requirements for prisoner evaluations under Rider Program).

The *Wolfe* decision and its progeny are binding on all state officials acting pursuant to I.C. § 19–2601. These numerous decisions preclude Vernon and McKinsey from claiming that the requirement that they provide at least the minimum due process guarantees to inmates in the Rider Program was not clearly established under state law. Given the clarity, consistency and particularity of the Idaho decisions, we conclude that the inmates' rights were clearly established at the time of the alleged violations.

### B

■ Vernon and McKinsey contend that they are still entitled to qualified immunity because they acted reasonably in light of the pre-existing law. In order to succeed, Vernon and McKinsey must show that the contours of the right are not "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

*State v. Wolfe* explicitly holds that due process mandates the following procedures: (1) the inmate must be given adequate notice before the hearing, including notice of the substance of the matters that will be considered; (2) the inmate must have an opportunity to explain or rebut any testimony or recommendations; and (3) the inmate must be free to call witnesses on his behalf from among the employees and other inmates at NICI. 582 P.2d at 735.

---

5. Vernon and McKinsey, in their capacities as administrators of Rider Program, were performing discretionary duties and may raise a defense of qualified immunity. *See Davis v. Scherer,* 468 U.S. 183, 197 n. 14, 104 S.Ct. 3012, 3021 n. 14,

82 L.Ed.2d 139 (1984) ("[a] law that fails to specify the precise action that the official must take in each instance creates only discretionary authority"); *F.E. Trotter, Inc. v. Watkins,* 869 F.2d 1312, 1314 (9th Cir.1989).

The inmates argue that they are deprived of these due process guarantees because they are informed of the hearing only 24 hours in advance, they are not given copies of the report and recommendation to enable them to rebut the report's findings, and they are immediately placed in solitary confinement. Consequently, they assert that they are unable to speak to their attorney, unable to contact witnesses and unable to have access to the law library.

Vernon and McKinsey argue that a reasonable person could not have known that this conduct violated the inmates' due process rights because, although *Wolfe* established minimum due process requirements, it did not specify how those requirements are to be met. Specifically, Vernon and McKinsey argue that no federal or Idaho court has decided the necessary amount of advance notice to be given to an inmate before the hearing, the adequacy of the notice to be given, or whether placing the inmate in isolation without access to counsel, witnesses, or law books violates the procedures enumerated by *Wolfe*. They contend that because no court has determined that their specific conduct violates the Due Process Clause, no reasonable person could know that their conduct was unlawful.

Vernon and McKinsey argue for a rule where every violation of a duty must be litigated at least once in a case involving the exact factual circumstances as those presently involved before the official may be held liable for violating that duty. *Anderson v. Creighton*, however, holds that it is not necessary that a prior decision rule "the very action in question" unlawful to deny a defendant the protection of qualified immunity. 483 U.S. at 640, 107 S.Ct. at 3039. *See also Alexander v. Perrill*, 916 F.2d 1392, 1397–98 (9th Cir.1990). Rather, as stated earlier, the contours of the right must be sufficiently clear so that a reasonable official would know that his conduct violates that right. *See Anderson v. Creighton*, 483 U.S. at 640, 107 S.Ct. at 3039.

We hold that Vernon and McKinsey have not carried their burden of demonstrating that their conduct was reasonable in light of existing law. The contours of the inmates rights are clearly established in *Wolfe*. An objectively reasonable official would know that the procedures used at NICI denied the inmates their right to a reliable rehabilitation report. At the very least, a reasonable official would know that an inmate would not be able to adequately prepare for the rebuttal hearing or call witnesses at the hearing after being placed in segregation with no outside contact. *See Bradford v. State*, 124 Idaho 788, 864 P.2d 626, 629 (App.1993) (questioning inmates ability to contact and call witnesses after being placed in segregation).

## V

We conclude that the inmates have a protected liberty interest in the preparation of an accurate and reliable rehabilitation report. We also hold that Vernon and McKinsey are not entitled to qualified immunity from damages for the due process violations alleged by the inmates. The district court is AFFIRMED.