96 F.3d 1298
 112 Ed. Law Rep. 687, 96 Cal. Daily Op. Serv. 7235,
96 Daily Journal D.A.R. 11,891
 P.B.,* on her own behalf and on behalf of
N.B., a minor; S.G., on her own behalf and on
behalf of L.G., a minor; C.D., on her
own behalf and on behalf of
D.D., Plaintiffs-Appellees,
v.
Alfred KOCH, Principal of Preston High School, Defendant-Appellant,
and
Scott Beckstead; Mary Jo Roberts; George Wilcox; Orson
Bowler, Defendants.
 No. 95-35056.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1996.
Decided Sept. 27, 1996.
 
 Phillip S. Collaer, Quane, Smith, Howard & Hull, Boise, ID, for defendant-appellant.
 Stephen L. Pevar, American Civil Liberties Union, Denver, CO, for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Idaho, Edward J. Lodge, District Judge, Presiding. D.C. No. CV-91-00330-EJL.
 Before: FLETCHER, JOHN T. NOONAN, Jr. and RYMER, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Defendant Alfred Koch, the principal of Preston High School, a public high school in Preston, Idaho, appeals from the district court's denial of his motion for summary judgment on the grounds of qualified immunity. Three students, N.B., L.G., and D.D., sued Koch for use of excessive force. N.B. claims that Koch slapped him in the face and grabbed his neck. L.G. claims that Koch grabbed him by the neck and punched him in the chest. D.D. claims that Koch grabbed him by the neck and threw him head first into the lockers. Koch does not dispute that he used force against the students, although he disputes portions of the plaintiffs' accounts of the incidents.
 
 
 2
 Koch moved for qualified immunity, contending that his conduct did not violate clearly established constitutional rights. The district court denied the motion, concluding that students have a clearly established liberty interest in freedom from arbitrary corporal punishment. Koch appeals.
 
 
 3
 We affirm. The students had by 1990 a clearly established constitutional right to be free from the force allegedly used by Koch. No reasonable principal in 1990 could have thought it lawful to engage in the conduct plaintiffs allege.
 
 I[1]
 
 4
 N.B.
 
 
 5
 On September 14, 1990, N.B., a 15-year-old sophomore, was with several friends in the Preston High school parking lot after a school football game. He was talking with a friend about Preston's quarterback, whom they agreed always wanted to have his own way. N.B. then said something like "Yeah, Heil Hitler," referring to the quarterback.
 
 
 6
 Koch walked by and heard the words "Heil Hitler." He assumed they were directed at him. Without giving N.B. a chance to explain, Koch admits that he "hit [N.B.] with the back hand and then the front hand" across the mouth. Koch grabbed N.B.'s neck and squeezed, causing bruises which turned purple and lasted for a couple of days. N.B. went to the emergency room and was given Advil and an ice pack. He was hoarse for several days.
 
 
 7
 N.B. reported the incident to the police, who investigated and charged Koch with assault and battery. Koch pled guilty and was placed on three months probation.
 
 
 8
 L.G.
 
 
 9
 At the time of the incident, January 1991, L.G. was a freshman at Soda Springs High School and played on the freshman basketball team. His team had just played the Preston team at Preston. He was sitting in the bleachers watching the varsity game. During halftime, the drill team began a special service for their recently deceased drill teacher. L.G. testifies that he was unaware of the special program being performed. Koch approached L.G. and his seatmates and asked them to be quiet. L.G. did not hear him. L.G. testifies that Koch "grabbed me by the arm and pulled me outside and punched me around, and he punched me in the chest." Koch again "grabbed [him] by the neck and pulled [him] out again." The incident has affected L.G. emotionally because he has trouble trusting people. Although Koch disputes the details of the incident, he does admit that he used physical force which he guesses he did not have to use.
 
 
 10
 D.D.
 
 
 11
 On March 27, 1991, Koch saw D.D. wearing his hat in the school corridor and asked him to remove it. D.D. did so, but put his hat back on after passing Koch. Koch snatched the hat off D.D.'s head. According to D.D.:
 
 
 12
 Mr. Koch had his hands around my neck. And when he grabbed me ... he was jerking me around and I was trying to get him to let go of my neck, and he told me to come with him and so he was turning me around. [As] we got by the lockers, he was just yelling, he was blowing his stack. And he threw me headfirst into the lockers, and my head had hit into the lockers and I fell to my knees when my head hit into the lockers. And he grabbed me by the back of my neck again and lifted me up.... [H]e yanked me into his office and ... he hit me in the chest with the back of his hand.
 
 
 13
 According to Koch, he did not push or shove D.D.; D.D. "stumbled and fell to the ground." The police investigated the incident but did not file charges against Koch.
 
 
 14
 On April 17, 1991, the School Board heard evidence regarding these incidents. The Board voted to place Koch on probation for one year.
 
 
 15
 In 1991, N.B., L.G. and D.D., through their mothers, filed suit against Koch in the district of Idaho seeking declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983. They also sued as defendants Superintendent Bowler and members of the School Board, claiming that Koch had assaulted and battered many students before and that had these defendants adequately disciplined Koch in the past, the incidents would not have occurred.
 
 
 16
 Defendants moved for summary judgment. On March 31, 1994, the district court granted the school board members' motion for summary judgment and granted summary judgment on plaintiffs' First Amendment claims against all defendants. The court denied Koch's motion for summary judgment as to the three plaintiffs' Fourteenth Amendment excessive force claims, and partially denied Bowler's motion for summary judgment. Koch and Bowler then filed a second motion for summary judgment based on qualified immunity. This motion was granted as to Bowler and denied as to Koch. Koch now appeals from the denial of qualified immunity on plaintiffs' excessive force claims.[2]
 
 II
 
 17
 Although a denial of summary judgment is not usually an appealable order, the district court's denial of qualified immunity on summary judgment is immediately appealable. See Behrens v. Pelletier, --- U.S. ----, ----, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996) ("[S]ummary-judgment determinations are appealable when they resolve a dispute concerning an abstract issu[e] of law relating to qualified immunity, typically, the issue whether the federal right allegedly infringed was clearly established.") (emphasis in original) (internal quotations omitted); Johnson v. Jones, --- U.S. ----, ----, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995) (holding that a portion of a district court's summary judgment order that, though entered in a "qualified immunity" case, determines only a question of "evidence sufficiency" is not appealable); Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir.1996) ("Because the issue appealed from here concerns not which facts the parties may be able to prove but whether certain given facts show a violation of clearly established law, we conclude that we have jurisdiction."). That the parties dispute some of the facts does not render the denial of qualified immunity nonappealable. See Behrens, --- U.S. at ----, 116 S.Ct. at 842. Koch is entitled to contend on appeal that all of the evidence that the district court deemed sufficiently supported for purposes of summary judgment meets a standard of "objective legal reasonableness." See id. We consider whether, viewing the evidence in the light most favorable to plaintiffs, Koch's conduct was objectively reasonable. See id. at ----, 116 S.Ct. at 840. If it was, we must reverse the district court's denial of qualified immunity. If it was not, plaintiffs are entitled to proceed to trial.
 
 III
 
 18
 Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); see also Behrens, --- U.S. at ----, 116 S.Ct. at 838 (describing Harlow 's standard as one of "objective legal reasonableness"). Determining whether a public official is entitled to qualified immunity "requires a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official believe his conduct was lawful?" Browning v. Vernon, 44 F.3d 818, 822 (9th Cir.1995) (quoting Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir.1993)). "A public official is not entitled to qualified immunity when the contours of the allegedly violated right were sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." Osolinski, 92 F.3d at 936 (alterations in original) (internal quotations omitted).
 
 A.
 
 19
 The Supreme Court held as early as 1977 that public school students have a right guaranteed by the Due Process Clause "to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." Ingraham v. Wright, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977); see also Wood v. Ostrander, 879 F.2d 583, 589 (9th Cir.1989), cert. denied, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) (describing Ingraham as holding that students have "[a] liberty interest in personal security and freedom from restraint and infliction of pain"). Although the Ingraham Court did not grant certiorari regarding the specific question whether unreasonable corporal punishment violates substantive due process, the Court, in its analysis declared that students have a liberty interest in freedom from unreasonable restraint. The Court has recently described Ingraham as follows:
 
 
 20
 The same distinction applies to Ingraham, which addressed the rights of schoolchildren to remain free from arbitrary corporal punishment. The Court noted that the Due Process Clause historically encompassed the notion that the state could not "physically punish an individual except in accordance with due process of law" and so found schoolchildren sheltered. Although children sent to public school are lawfully confined to the classroom, arbitrary corporal punishment represents an invasion of personal security to which their parents do not consent when entrusting the educational mission to the State.
 
 
 21
 Sandin v. Conner, --- U.S. ----, ---- - ----, 115 S.Ct. 2293, 2300-01, 132 L.Ed.2d 418 (1995) (internal citation omitted).
 
 
 22
 In reliance on Ingraham and other Supreme Court decisions, the Third, Fourth, Sixth, Eighth, and Tenth Circuits had each held prior to 1990 that excessive corporal punishment can violate a student's substantive due process rights. In Hall v. Tawney, 621 F.2d 607, 613 (4th Cir.1980), the court concluded that the "right to ultimate bodily security--the most fundamental aspect of personal privacy--is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process.... [W]e simply do not see how we can fail also to recognize it in public school children under the disciplinary control of public school teachers." Id. at 613; accord Garcia v. Miera, 817 F.2d 650, 653 (10th Cir.1987) ("We believe that Ingraham requires us to hold that, at some point, excessive corporal punishment violates the pupil's substantive due process rights."), cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988); Metzger v. Osbeck, 841 F.2d 518, 520 (3rd Cir.1988) ("A decision to discipline a student, if accomplished through excessive force and appreciable physical pain, may constitute an invasion of the child's Fifth Amendment liberty interest in his personal security and a violation of substantive due process prohibited by the Fourteenth Amendment."); Webb v. McCullough, 828 F.2d 1151, 1159 (6th Cir.1987) (same); Wise v. Pea Ridge School District, 855 F.2d 560, 565 (8th Cir.1988) (same).[3] There is no reason to doubt that the Ninth Circuit would have followed these cases in 1990-1991 to conclude that physical attacks on a student by a principal in the manner alleged here violate the Constitution. See Allen v. Sakai, 48 F.3d 1082, 1089 (9th Cir.1994) ("In the absence of preexisting binding precedent within this circuit, this court look[s] at all available decisional law including decisions ... of other circuits to determine whether a plaintiff has shown that the illegality of a defendant's conduct should have been apparent when it occurred."), cert. denied, --- U.S. ----, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995).
 
 
 23
 Moreover, although the Ninth Circuit had not explicitly addressed a student's right to be free from arbitrary corporal punishment or other excessive force, established due process principles prohibiting arbitrary, irrational, and malicious state action clearly indicated that excessive force by a principal against a student violated the student's constitutional rights. The Fourteenth Amendment protects against the government's interference with "an individual's bodily integrity." Armendariz v. Penman, 75 F.3d 1311, 1319 (9th Cir.1996) (en banc) (citing Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209-10, 96 L.Ed. 183 (1952)); see also Albright v. Oliver, 510 U.S. 266, ----, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994); Doe v. Petaluma City Sch. Dist., 54 F.3d 1447, 1451 (9th Cir.1994) ("[T]he contours of an individual's substantive due process right to bodily integrity were much clearer in 1987 than the Title XI right allegedly violated in this case."). As early as 1975, the Ninth Circuit held that "an unprovoked assault and battery by a guard upon a prisoner" violates substantive due process. Meredith v. State of Arizona, 523 F.2d 481, 484 (9th Cir.1975).[4] "Government officials are, of course, justified in using force--even deadly force--in carrying out legitimate governmental functions. But, when the force is excessive, or used without justification or for malicious reasons, there is a violation of substantive due process." Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1408 (9th Cir.1989), cert. denied, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990), overruled in part by Armendariz, 75 F.3d at 1326.[5]
 
 
 24
 The Ninth Circuit has set forth factors to consider in determining whether substantive due process has been violated:In determining whether substantive due process rights have been violated, we will look to such factors as the need for the governmental action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm.
 
 
 25
 Id. at 1409 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). In the instant case, there was no need to use force against the three students. Accordingly, the force Koch allegedly used--slapping, punching, and choking the students--bears no reasonable relation to the need. Because there was no need for force, one can reasonably infer that Koch took these actions not in good faith but for the purpose of causing harm. In this context, the deliberate and intentional harm allegedly inflicted--causing pain, bruising, and emotional injury--is significant. Cf. Felix v. McCarthy, 939 F.2d 699 (9th Cir.1991) (denying qualified immunity where guard's unprovoked attack against prisoner causes bruising, soreness, and emotional damage), cert. denied, 502 U.S. 1093, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992); Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (holding that excessive force against a prisoner violates the Eighth Amendment even in the absence of significant injury).
 
 
 26
 Whether we describe the "right" as the right to bodily integrity, the right to be free from "unjustified intrusions on personal security," Ingraham, 430 U.S. at 673, 97 S.Ct. at 1413, the right to be free from excessive force, or the right to be free from arbitrary and excessive corporal punishment, it is clear that a principal, who physically assaulted his students in the manner Koch allegedly did, has violated their clearly established constitutional rights. Accordingly, we conclude that Koch's alleged use of excessive force in 1990 to 1991 violated plaintiffs' clearly established rights.
 
 B.
 
 27
 For essentially the same reasons, Koch could not have reasonably believed his alleged conduct to be lawful. Browning, 44 F.3d at 822. In light of the Supreme Court's holding that students are protected from unjustified intrusions on personal security and out-of-circuit cases holding that arbitrary corporal punishment is unconstitutional, no reasonable principal could think it constitutional to intentionally punch, slap, grab, and slam students into lockers. Moreover, excessive force against a prisoner or suspect was clearly unconstitutional at the time. No reasonable school official could think a student not entitled to equivalent protection from attacks on his bodily integrity. "[I]t is not necessary that a prior decision rule 'the very action in question' unlawful to deny a defendant the protection of qualified immunity." Id. at 823 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). All government officials are on notice that it is unlawful to use excessive force against citizens. Although reasonable minds can differ over the appropriateness and the amount of corporal punishment under certain circumstances, reasonable minds cannot differ over the appropriateness of Koch's alleged conduct. Koch's use of force does not satisfy a standard of "objective legal reasonableness." Behrens, --- U.S. at ----, 116 S.Ct. at 842. The district court properly denied Koch's motion for summary judgment on the grounds of qualified immunity.
 
 C.
 
 28
 Koch contends in a conclusory manner that the district court improperly denied defendants' motions to strike. He asserts that the district court erred in failing to strike the Affidavit of Stephen Pevar as untimely, unsigned, and/or containing inadmissible evidence, for purposes of the defendants' first motion for summary judgment. It is unclear if Koch challenges other evidence. He does not explain why the district court erred.
 
 
 29
 This issue is not properly before the court. "A defendant cannot inject into an interlocutory appeal issues that are otherwise not immediately appealable." Allen v. Sakai, 48 F.3d 1082, 1085 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995); see also Johnson, --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238. The issue before the court is the district court's denial of qualified immunity. The district court expressly stated that it was disregarding the challenged portions of the affidavits for purposes of its qualified immunity ruling. Based on other relevant, admissible evidence in the record, the district court properly concluded that Koch was not entitled to qualified immunity.
 
 IV
 
 30
 The district court correctly denied Koch's motion for summary judgment on the grounds of qualified immunity. The plaintiffs had by 1990 a clearly established constitutional right to be free from the force allegedly used by Koch.
 
 
 31
 AFFIRMED.
 
 RYMER, Circuit Judge, concurring:
 
 32
 I concur in the judgment because there is little doubt that, by 1990, the contours of a student's right to be free from the violations of bodily integrity alleged in this case were clearly established. The district court therefore correctly denied Koch's motion for summary judgment on the ground that he was entitled to qualified immunity. Beyond that we cannot go, since the district court found (in resolving an earlier round of summary judgment motions) that there are genuine issues of material fact as to the need for corporal punishment, amount of force, extent of injury, and the reason for the force being applied to each of the students. Johnson v. Jones, --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).
 
 
 
 *
 The case was originally filed under the full names of the plaintiffs, but because the disposition called for publication, the court has decided on its own motion to delete the full names of the plaintiffs
 
 
 [1]
 Except as otherwise noted, our recitation of the facts is based on plaintiffs' evidentiary submissions. Our references in the opinion to the plaintiffs' allegations are meant to refer to plaintiffs' allegations which are supported by competent evidence
 
 
 [2]
 The only appeal presently before the court is Koch's appeal from the district court's denial of qualified immunity. Although plaintiffs originally filed an appeal from the district court's grant of partial summary judgment of the claims against the other defendants, the Clerk of Court issued an order to show cause why the appeal should not be dismissed as a non-final order. Plaintiffs agreed that their appeal was premature and withdrew the appeal
 
 
 [3]
 The Fifth Circuit's analysis differs. The Fifth Circuit agrees that "corporal punishment in public schools is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." Fee v. Herndon, 900 F.2d 804, 808 (5th Cir.) (internal quotation omitted), cert. denied, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990). Nevertheless, it has refused to recognize a cause of action when there are adequate state remedies. Id. No other court has adopted this reasoning, and the Ninth Circuit has explicitly rejected the principle that a plaintiff is precluded from bringing a substantive due process claim when there are adequate state remedies. See, e.g., Rutherford v. City of Berkeley, 780 F.2d 1444, 1448 (9th Cir.1986) (where plaintiff alleges substantive due process violation, "the availability of state court relief does not bar federal relief under § 1983"); McRorie v. Shimoda, 795 F.2d 780, 785 (9th Cir.1986). Thus, there is no reasonable possibility that the Ninth Circuit would have followed the Fifth Circuit's reasoning. The Fifth Circuit itself appears to have moved away from this position. See Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 450 (5th Cir.) (en banc) (holding that physical sexual abuse by school employee violates student's clearly established substantive due process right to bodily integrity, and allowing claim to go forward), cert. denied, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994)
 
 
 [4]
 The Supreme Court has subsequently held that allegations of excessive force should be analyzed under a more specific constitutional provision, rather than generalized notions of due process, if one is applicable. Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989). "In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." Id.; see also Armendariz, 75 F.3d at 1318-24. Thus, a convicted prisoner is protected from excessive force by the Eighth Amendment and a citizen being arrested or investigated is protected from excessive force by the Fourth Amendment. Graham, 490 U.S. at 394, 109 S.Ct. at 1870-71. The Eighth Amendment does not apply to excessive force against students. See Ingraham, 430 U.S. at 664, 97 S.Ct. at 1408-09. The only amendment other than the Fourteenth that arguably applies to the use of excessive force against a student is the Fourth. While several courts have, post-Graham, still described a student's right to be free from excessive force in terms of substantive due process, see Searles v. Southeastern Penn. Transp. Auth., 990 F.2d 789, 794 (3rd Cir.1993); cf. Taylor Indep. Sch. Dist., 15 F.3d at 450-51, at least one circuit has applied the Fourth Amendment to a teacher's use of force against a student, see Wallace by Wallace v. Batavia Sch. Dist., 68 F.3d 1010, 1016 (7th Cir.1995). The Fourth Amendment standard is one of "objective reasonableness" under the circumstances, without regard to the official's underlying intent or motivation. Graham, 490 U.S. at 397, 109 S.Ct. at 1872. Koch's alleged actions easily satisfy this standard: since there was no need for force, Koch's use of force was objectively unreasonable. Although the reasonableness of a Fourth Amendment seizure of a student must be evaluated in the context of the school environment, see Vernonia School Dist. v. Acton, --- U.S. ----, ----, 115 S.Ct. 2386, 2392, 132 L.Ed.2d 564 (1995), this principle provides no comfort to Koch. Koch's alleged actions did not involve his acting in a disciplinary role but rather engaging in an arbitrary assault. Thus, there are no countervailing educational objectives to weigh against the intrusion on the students' liberty
 Regardless of the appropriate "home" for plaintiffs' right to be free from excessive force, there was a clearly established right to be free from such force in 1990 and 1991. That there is possible uncertainty as to the appropriate test does not immunize Koch's actions from liability. Cf. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir.1989) (suggesting that although law in the circuit was unclear regarding the appropriate test, defendants were not entitled to qualified immunity because right was clearly established), cert. denied, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); Palmer v. Sanderson, 9 F.3d 1433, 1436 n. 2 (9th Cir.1993) (rejecting a qualified immunity defense to a claim of excessive force under the Fourth Amendment and explaining that "the fact that excessive force claims were occasionally analyzed under the due process clause before 1989 does not mean that the Fourth Amendment's application to these situations was not clearly established"). Under any standard, Koch's alleged actions were clearly unlawful. Thus, for purposes of resolving this qualified immunity appeal, we need not and do not resolve the question of whether the Fourth Amendment, rather than the Due Process Clause, protects a student from the use of excessive force by a school official.
 
 
 [5]
 Sinaloa has been overruled by Armendariz to the extent it held that substantive due process could extend to circumstances already addressed by a more specific constitutional provision. Armendariz, 75 F.3d at 1326. Sinaloa 's description of due process still applies, however, where no other constitutional provision is applicable