**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PRESCHOOLER II; JANE ROE,
   *Plaintiffs-Appellees,*

v.

CLARK COUNTY SCHOOL BOARD OF
TRUSTEES; CLARK COUNTY SCHOOL
DISTRICT; KEITH RHEAULT; STATE OF
NEVADA; STATE OF NEVADA
DEPARTMENT OF EDUCATION,
   *Defendants,*

and

KAY DAVIS; CARLOS ARTURO
GARCIA; CHARLENE A. GREEN;
MICHAEL S. HARLEY; DARRYL
WYATT; KATHLEEN LISANTI,
   *Defendants-Appellants.*

No. 04-16891

D.C. No.
CV-04-00348-RLH

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, District Judge, Presiding

Argued and Submitted
November 16, 2006—San Francisco, California

Filed March 21, 2007

Before: A. Wallace Tashima and M. Margaret McKeown,
Circuit Judges, and David A. Ezra* District Judge.

*The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

3325

Opinion by Judge McKeown

## COUNSEL

Mark E. Ferrario and Tami D. Cowden, Kummer Kaempfer Bonner Renshaw & Ferrario, Las Vegas, Nevada, for the appellants.

Niels L. Pearson and Marianne C. Lanuti, Selman Breitman, LLP, Las Vegas, Nevada, for the appellees.

## OPINION

McKEOWN, Circuit Judge:

This case arises from the claimed physical abuse of a four-year old disabled child in a public school setting. The child, Preschooler II, and his mother, Jane Roe, filed suit against the state, school district, school board and various school personnel ("School Officials") under the Americans with Disabilities Act (ADA), the Rehabilitation Act, the Individuals with Disabilities Education Act (IDEA), and 42 U.S.C. § 1983.[1] Preschooler II claims abuse ranging from being beaten, slapped, and body slammed to unexplained bruises and shoeless walks from the school bus to the classroom. The district court denied the School Officials' motion to dismiss based in part on qualified immunity. In this interlocutory appeal, the School Officials properly raise only the issue of qualified immunity for the § 1983 claims.[2]

---

[1]In the district court, this case is a companion case to *Doe et al. v. State of Nevada et al.*, CV-S-03-1500-LRH, a suit brought by a disabled autistic child, referred to as Preschooler I, who was in Preschooler II's class.

[2]Both parties seek to use this appeal to air a variety of discovery disputes that have emerged in Preschooler I's case, as well as to develop further their respective requests for declaratory judgment regarding Nev. Rev. Stat. § 388.521, the Nevada Reporting Statute. The district court has yet to address these matters, and they are not, in any event, appropriate for consideration in this interlocutory appeal. Additionally, while a significant

Not long ago, our court acknowledged "that the right of a student to be free from excessive force at the hands of teachers employed by the state was clearly established as early as 1990." *Doe v. State of Hawaii Dep't of Educ.*, 334 F.3d 906, 910 (9th Cir. 2003). At this stage of the proceedings, we construe the allegations in the light most favorable to Preschooler II. *See, e.g.*, *Beier v. City of Lewiston*, 354 F.3d 1058, 1063 (9th Cir. 2004). Because certain of the allegations, such as the unexplained bruising and shoeless walks, do not rise to the level of constitutional claims, we reverse the district court's denial of qualified immunity on those claims. We affirm the district court's denial of qualified immunity on the remaining claims.

## BACKGROUND[3]

In the 2002-2003 school year, Preschooler II was four years old. He had been diagnosed with tuberous sclerosis, a neurological disease that causes tumors to form in various organs, primarily in the brain, eyes, heart, kidneys, skin, and lungs. Symptoms include seizures, rashes, and skin lesions. In addition, Preschooler II suffers from non-verbal autism. Based on these diagnoses, Preschooler II is eligible for special education services under the IDEA. *See* 20 U.S.C. § 1400.

In compliance with the IDEA and state regulations, Preschooler II began his schooling at a special education program

portion of the parties' briefs concerns whether the IDEA may be enforced through § 1983 actions, focus on this issue causes unnecessary confusion. Preschooler II's Amended Complaint does not seek relief for IDEA violations through § 1983. His Fourth Cause of Action, "violation of 42 U.S.C. § 1983," only requests a monetary award "for the deprivation of Plaintiff's constitutional rights." Because it is not pled as a cause of action in the complaint, we need not address whether § 1983 may be used to enforce the IDEA.

[3]The facts related to this background discussion are derived from the Amended Complaint.

known as Kids Intensive Delivery of Services (KIDS) at the Betsy Rhodes School in Clark County, Nevada. The program was staffed by one teacher, Kathleen LiSanti, and various teacher assistants.

LiSanti allegedly physically abused Preschooler II on repeated occasions. The claimed abuses started in September 2002, and continued until early April 2003. Preschooler II transferred to another elementary school soon after. The alleged incidents of abuse are as follows:[4]

(1)   "Preschooler II was assaulted at circle time by Defendant LiSanti, when Defendant LiSanti grabbed Plaintiff Preschooler II's hands and slapped him repeatedly . . . ." LiSanti beat Preschooler II, hitting his head and face. This event was especially traumatic for Preschooler II because of his tuberous sclerosis diagnosis, which causes tumors in the eyes and brain. Preschooler II alleges that LiSanti admitted wrongdoing when she later "apologized for this assault and battery . . . ."

(2)   LiSanti maliciously body slammed Preschooler II into a chair, an event witnessed by a detective who testified at Preschooler II's administrative hearing.

(3)   On four occasions, LiSanti forced Preschooler II to "walk without shoes across the asphalt" from the school bus to the classroom.

(4)   On one occasion, LiSanti documented in writing noticeable bruising to Preschooler II's arms. Beyond the bruises documented by LiSanti, Preschooler II sustained unspecified bruising to the inner thigh regions in addition to a thick fingernail scratch to his neck region.

---

[4]Preschooler II alleges that informally consolidated discovery in Preschooler I's case has revealed further related acts of abusive and deliberately indifferent behavior. These additional facts are not appropriately considered at this stage of proceedings; our analysis is limited to the pleadings.

Preschooler II alleges that the School Officials were on notice of the violent and unlawful conduct ongoing in the classroom before and during the time Preschooler II was abused, and that they failed to act to prevent further harm to him. Preschooler II's Amended Complaint relates several events to support the notice allegation. These incidents allegedly provided notice of the ongoing abuses to the school principal, Darryl Wyatt, and district personnel who, according to Preschooler II, failed to report the incidents as required by statute, or to correct the situation. In addition to Wyatt, Compliance Director Michael Harley, Associate Superintendent Charlene Green, Superintendent Carlos Garcia, and Special Education Specialist Kay Davis allegedly knew of and failed to report or remediate possible child abuse of Preschooler II.

Preschooler II's mother was suspicious that something was negatively affecting the child at school because he had begun to develop violent behavior not previously exhibited. Nonetheless, she was not informed of any of the specific alleged abuses until early April 2003, when Principal Wyatt first told her that her son had been battered by LiSanti. LiSanti apparently was trying to teach Preschooler II not to swat himself, a behavior incident to his disability. Months after the first abuse report, LiSanti was placed on administrative leave.

After unsuccessful administrative proceedings, Preschooler II's mother filed suit in federal court. Preschooler II's eight causes of action are as follows: (1) Petition for Judicial Review, Declaratory and Equitable Relief, and Claim for Attorney's Fees and Costs; (2) Violation of the Americans with Disabilities Act; (3) Violation of the Rehabilitation Act; (4) Violation of 42 U.S.C. § 1983 Based on the Fourth and Fourteenth Amendments; (5) *Monnel/Canton* Claims; (6) Assault, Battery and Use of Aversive Interventions; (7) Negligence Claims; and (8) Negligent Failure to Report.

The School Officials moved to dismiss Preschooler II's second, third, fourth, fifth and eighth causes of action for fail-

ure to state a claim upon which relief can be granted. They also asserted qualified immunity with respect to the fourth cause of action, § 1983. In addition, the motion requested a declaratory judgment that the enforcement provisions of the Nevada Reporting Statute, § 388.521, are not "state educational requirements" under the IDEA.

The district court denied the motion to dismiss as to all claims, denied qualified immunity, and declined to reach whether Nevada's reporting requirements were incorporated into the IDEA. The court determined that qualified immunity was not warranted because Preschooler II had alleged conduct sufficient to support a claim for constitutional deprivation under the Fourth and Fourteenth Amendments and violations of clearly established law. *See Roe v. Nevada*, 332 F. Supp. 2d 1347 (D. Nev. 2004). School Officials LiSanti, Wyatt, Garcia, Green, Harley, and Davis filed this interlocutory appeal on the qualified immunity issue.

## ANALYSIS

We review de novo the district court's denial of qualified immunity. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994)). Government officials do not enjoy qualified immunity from civil damages if their conduct violates "clearly established constitutional or statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1987).

In analyzing whether the School Officials are entitled to qualified immunity, we address two sequential questions. First, we inquire whether, taken in the light most favorable to the party asserting the injury, that party has established a violation of a federal right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Assuming this threshold inquiry is satisfied, we consider whether the School Officials' conduct violated "clearly established statutory or constitutional rights of which

a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow*, 457 U.S. at 818). The clearly established test is satisfied if "in light of pre-existing law the unlawfulness [is] apparent." *Id.* Qualified immunity will not protect the "plainly incompetent" or those "who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224 (1991) (quotations omitted).

## I. PHYSICAL ABUSE OF PUBLIC SCHOOL STUDENT— DEFENDANT LISANTI

**[1]** Our initial task is to determine whether the physical abuse allegations rise to the level of constitutional violations. We begin with the principle "that excess force by a [school official] against a student violate[s] the student's constitutional rights." *P.B. v. Koch*, 96 F.3d 1298, 1302-03 (9th Cir. 1996). The consequences of a teacher's force against a student at school are generally analyzed under the "reasonableness" rubric of the Fourth Amendment, although historically courts applied substantive due process analysis under the Fourteenth Amendment's "shocks the conscience" test. *See Doe*, 334 F.3d at 908-09 (9th Cir. 2003) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 342 (1985)) (applying the Fourth Amendment in the school context, requiring reasonableness to be assessed "in light of the age and sex of the student and the nature of the infraction," and explaining the movement from substantive due process to Fourth Amendment review).

**[2]** The teacher's seizure of Preschooler II and her alleged slapping, forced participation in self-beating and slamming were unreasonable in light of the child's age and disability and the context of the events. Preschooler II posed no danger to anyone nor was he disruptive in the classroom. At such a young age and suffering from significant and serious disabilities, autism as well as tuberous sclerosis, Preschooler II was even more vulnerable than the average pre-school child.

**[3]** The School Officials belittle the allegations and claim that LiSanti's conduct cannot be considered anything more

than, at the very worst, "a failure to conform to best practices." This effort to candycoat the claims ignores the court's obligation to accept the allegations as true and to characterize the alleged abuses in the light most favorable to Preschooler II. *See Saucier*, 533 U.S. at 201. When so construed, the beating, slapping, and slamming of Preschooler II by LiSanti violated the Fourth Amendment's prohibition of the use of excessive force against public schoolchildren.

The School Officials seek to distinguish LiSanti's head beating and slamming from the abuse imposed by the teacher in *Doe* who taped a healthy second grade boy's head to a tree for five minutes, and from the hitting and punching of several high school students challenged in *Koch*. The fact that Preschooler II is so severely disabled and was so young at the time of the abuse renders LiSanti's alleged conduct equally disturbing.

Unlike the teacher in *Doe* who abused the student in a single and relatively short incident, 334 F.3d at 908, LiSanti's abusive conduct allegedly occurred over a period of months. Preschooler II's mother alleges that the full extent of the abuse is not known, and Preschooler II cannot be counted on to report it since he was so young at the time and is nonverbal as a result of his autism. *Koch* involved physical force by a school principal for purportedly disciplinary reasons. The case is instructive in its conclusion that the force allegedly used "bears no reasonable relation to the need." 96 F.3d at 1304. Similarly, there was no need here for the claimed excessive force.

Although the abuse in *Doe* and *Koch* varies in degree and detail from the allegations here, those cases do not set a floor for benchmarking reasonable conduct. Nor do they serve as bookends that require us to shoehorn Preschooler II's case between them. Rather, the cases point to the need to look objectively at the specific circumstances of the school and child. "There need not be a case dealing with these particular

facts to find [a school official's] conduct unreasonable." *Doe*, 334 F.3d at 910 (citing *Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1131 (9th Cir. 2002)).

[4] The allegations of beating and slamming Preschooler II stand in stark contrast to the claims regarding unspecified bruises, scratches, and shoeless walks. The unexplained bruises and scratches, without more, do not rise to the level of a recognized constitutional violation. Under the Fourth Amendment, making a child walk from the bus without his shoes was not unreasonable, either as excessive force or abuse. The teacher was simply attempting to teach Preschooler II not to remove his shoes on the bus.[5] Although the parties dispute the pedagogical basis for this "lesson," we do not need to go down that path. Our review is limited to the constitutional challenge.

## II. CLEARLY ESTABLISHED LAW PROHIBITING PHYSICAL ABUSE OF PUBLIC SCHOOL STUDENTS—DEFENDANT LISANTI

[5] By 2002-2003 when Preschooler II was allegedly abused, the right of public school students to be free from excessive force imposed by their teachers was uncontroverted. As early as 1977, the Supreme Court stated that public school students have a constitutional due process right "to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." *Ingraham v. Wright*, 430 U.S. 651, 673 (1977). Even though the Court in *Ingraham* did not grant certiorari regarding the specific question of whether unreasonable corporal punishment violates substantive due process

---

[5]In *Doe*, we noted that "it may be possible for a school official to use excessive force against a student without seizing or searching the student, and that the Fourth Amendment would not apply to such conduct." 334 F.3d at 909. Even assuming a legitimate due process claim under the Fourteenth Amendment, it takes no further analysis to conclude that these actions do not "shock the conscience." *See, e.g.*, *Rochin v. California*, 342 U.S. 165, 172 (1952) (explaining the substantive due process "shocks the conscience" standard).

under the Fourteenth Amendment, it was plain that students have a liberty interest in freedom from unreasonable restraint and mistreatment. Nearly twenty years later, the Court described *Ingraham* as standing for the proposition that while "children sent to public school are lawfully confined to the classroom, arbitrary corporal punishment represents an invasion of personal security to which their parents do not consent when entrusting the educational mission to the State." *Sandin v. Conner*, 515 U.S. 472, 485 (1995).

In reliance on *Ingraham*, the Ninth Circuit, as well as a number of other circuits, held that excessive and unreasonable corporal punishment of public school students violates the students' constitutional rights. *See Koch*, 96 F.3d at 1304 (concluding that teacher's use of excessive force with high school students in 1990 and 1991 violated plaintiffs' substantive due process rights); *see also Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir. 1988) (holding excessive force in public school context is a violation of substantive due process guaranteed by the Fourteenth Amendment); *Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 565 (8th Cir. 1988) (same); *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir. 1987) (same); *Garcia v. Miera*, 817 F.2d 650, 653 (10th Cir. 1987) (same); *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980) (same).

Following *Ingraham*, the Supreme Court determined that allegations of excessive force in § 1983 actions should be analyzed under a more specific constitutional provision, rather than through generalized notions of substantive due process. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). As a consequence, we now typically analyze excessive force allegations against public school students under the Fourth Amendment. *See Doe*, 334 F.3d at 908, 909 ("[We] have recognized the movement away from substantive due process and toward the Fourth Amendment . . . . It is clear that the Fourth Amendment applies in the school environment.") (citations omitted).

**[6]** In light of the clear constitutional prohibition of excessive physical abuse of schoolchildren, and the heightened protections for disabled pupils, no reasonable special education teacher would believe that it is lawful to force a seriously disabled four year old child to beat himself or to violently throw or slam him. Existing law plainly prohibits excessive hitting, dragging or throwing of public school children. *See Koch*, 96 F.3d at 1304 ("no reasonable [school official] could think it constitutional to intentionally . . . slap . . . and slam students . . . ."). Therefore, LiSanti is not entitled to qualified immunity for the alleged head beating and slamming assaults on Preschooler II.

### III.   SUPERVISORY LIABILITY—SCHOOL OFFICIALS

Preschooler II alleges that Superintendent Garcia, administrative personnel Green, Davis, and Harley, and Principal Wyatt are individually liable under § 1983 for their inaction in the training, supervision and control of LiSanti. He also alleges that the School Officials showed a reckless and callous indifference to the rights of Preschooler II and other similarly situated preschoolers by permitting LiSanti to continue to work with Preschooler II, knowing she posed a safety risk to the children, and by not reporting or remediating the alleged abuse when they became aware of it.

**[7]** Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates "if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). At this early stage of the proceedings, Preschooler II does not need to show with great specificity how each defendant contributed to the violation of his constitutional rights. Rather, he must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law. *See Hydrick v. Hunter*, 466 F.3d 676, 689-90 (9th Cir. 2006) (denying

policy-making officials qualified immunity at the motion to dismiss stage based on inferences that the officials played an instrumental role in the alleged abuses). Preschooler II's allegations are sufficiently specific to meet this pleading requirement.

[8] The Amended Complaint details the allegations of abuse, the role of the School Officials, the knowledge and reporting duty of the officials, and their failure to report or take corrective action. Preschooler II alleges that the School Officials ratified a custom that subjected Preschooler II to an educational environment in which he was physically and emotionally abused, in part by failing to train special education teachers, or to hire qualified individuals to work in special education classrooms. He also alleges that the officials abdicated their duty to report and discipline LiSanti when they first became aware of the alleged abuses. Whether Preschooler II ultimately will be able to establish the claimed knowledge or "blind eye" acquiescence in the alleged abuse is uncertain, but given the liberal requirements of notice pleading, no further specificity is expected of the complaint. Under the Ninth Circuit's limited supervisory liability doctrine, Preschooler II's allegations against the supervisory school official defendants constitute a violation of constitutional law sufficient to satisfy step one of the *Saucier* analysis.

## IV.  CLEARLY ESTABLISHED UNLAWFULNESS OF FAILURE TO REMEDIATE—SCHOOL OFFICIALS

[9] It has long been clearly established that "[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005) (quoting *Larez*

*v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)). We have also held that a person "subjects" another to the deprivation of a constitutional right, within the meaning of § 1983, "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)). The requisite causal connection may be established when an official sets in motion a "series of acts by others which the actor knows or reasonably should know would cause others to inflict" constitutional harms. *Id.*

[10] The alleged acts and omissions on the part of the School Officials, if proven true, establish that they are liable for the violation of Preschooler II's clearly established constitutional rights because they demonstrated disregard of their responsibilities in hiring, training, supervising, disciplining and reporting abuses committed by LiSanti. The physical abuse allegations here do not concern IDEA violations or some obscure and abstract legal requirements. Instead, a reasonable special education school official would know that LiSanti's alleged abusive conduct, and the failure of other special education officials to address that conduct, are grounds for liability. For these reasons the district court properly denied qualified immunity to the School Officials.

**AFFIRMED** as to the denial of qualified immunity on the head beating and slamming claims; **REVERSED** as to the denial of qualified immunity on the unexplained bruises, scratches, and shoeless walks claims; and **REMANDED** for further proceedings. The parties shall bear their own costs on appeal.